IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DEWANE D. FRASE, as Special Administrator
of the Estate of Douglas Frase, and CAROL
L. FRASE

                       Plaintiffs,                         OPINION AND ORDER

     v.

                                                          19-cv-273-wmc

ASHLAND CHEMICAL CO. DIVISION
OF ASHLAND, INC., et al.,

                       Defendants.

In this products liability action, plaintiffs claim that Douglas Frase died as a result of his exposure to certain "benzene-containing materials" during the course of his employment at a tire plant. Plaintiffs have now filed suit against various named defendants and ninety-five unnamed defendants, alleging claims of strict liability, negligence, and failure to warn. Before the court are the named defendants' motions to dismiss the case for failure to state a claim. (Dkts. #4, 6, 7, 19, 13.) Also before the court is plaintiffs' motion to seek leave to file a second amended complaint. (Dkt. #52.) For the reasons discussed below, the court will deny plaintiffs' motion and grant defendants' motions in part, while providing plaintiffs a limited opportunity to amend the deficiencies identified in their complaint.

BACKGROUND

A. Parties

Pursuant to Wis. Stat. § 895.04, plaintiff Dewane Frase brings this suit as special administrator of the Estate of Douglas Frase, and plaintiff Carole Frase brings suit as

Douglas Frase's surviving spouse.  The court will refer to plaintiffs by their full names, while referring to decedent Douglas Frase simply as "Mr. Frase" or "Frase."

Initially, plaintiffs sued nine, named defendants and ninety-five fictitious defendants curiously denominated "defendants 5 through 100."  As discussed in greater depth in the procedural history section below, plaintiffs later amended their complaint, effectively dismissing four of the named defendants, but then tried to add those same defendants back in by moving to file another amended complaint.  These four, dismissed defendants are Four Star Oil and Gas Company (f/k/a Getty Oil Company), Shell Chemical L.P., Sunoco, Inc. (R & M),[1] and Texaco Downstream Properties, Inc. -- and will be referred to here as the "Group A defendants."   The remaining five defendants are Ashland Chemical Company Division of Ashland, Inc., BP Products North American, Inc., Exxon Mobil Corporation, Shell Oil Company, and Union Oil Company of California d/b/a/ Unocal Corporation -- referred to here as the "Group B defendants."

## B.  Basic Fact Allegations

From approximately 1952 until 1992, Mr. Frase was employed at a tire manufacturing facility operated by The Uniroyal Goodrich Tire Company, Inc. ("the Uniroyal plant").  During those forty years, Frase worked in multiple departments and positions at the Uniroyal plant, including tire builder and/or loader, treadman, assembly

---

[1] In dismissing "Sunoco, Inc. (R & M)," plaintiffs wrote: "Sunoco (R&M), LLC (incorrectly named as Sunoco, Inc. (R&M)."  (Pls.' Notice of Dismissal (dkt. #41) 1.)  This led the clerk's office to create two Sunoco defendants in ECF.  However, it is apparent from plaintiffs' filings and defendants' responses that the two Sunoco defendants are the same; the court therefore directs the clerk's office to delete Sunoco (R&M), LLC from CM/ECF.

and installation, storing and curing, and conveyer attendant.

On April 1, 2016, Frase was diagnosed with Mylodysplastic Syndrome ("MDS"), from which he died approximately seven months later, on November 7.  Plaintiffs assert that Frase's death was a "direct and proximate result of [his] exposure to Defendants' Benzene-Containing Materials."  (Compl. (dkt. #1-2) ¶ 4.)  Plaintiffs define "Defendants' Benzene-Containing Materials" as "benzene, benzene derivatives, rubber solvents, solvent blends, and other toxic and hazardous chemicals" that defendants, "and/or their predecessor or successors in interest," "designed, produced, manufactured, distributed, sold, supplied, delivered, handled, marketed, advertised, instructed, and/or placed into the stream of commerce."  (*Id.* ¶¶ 1, 3.)  In their complaint, plaintiffs allege three, formal legal grounds for liability against each of the named and unnamed defendants for negligence, strict liability, and failure to warn.  (*Id.* at 7-12.)


### C.  Procedural Background

Plaintiffs originally filed this action in state court on December 28, 2018.  While still in state court, the Group A defendants filed motions to dismiss plaintiffs' complaint due to improper service and lack of personal jurisdiction.  Before these dismissal motions were briefed or resolved in state court, however, the Group B defendants filed a notice of removal to federal court asserting complete diversity between plaintiffs and all named defendants.  (Notice of Removal (dkt. #1).)  The Group B defendants argued that the Group A defendants did not need to consent to removal because they were not properly served.  (*Id.* ¶ 11 (citing 28 U.S.C. § 1446(b)(2)(A) ("[A]ll defendants who have been properly joined and served must join in or consent to the removal of the action.").)  The

3

Group B defendants also indicated that they would file a separate consent to removal "to the extent necessary and limited solely to the issue of removal." (*Id.* ¶¶ 15, 20.)

All defendants then moved to dismiss the complaint for failure to state a claim on April 11, 2019. (Dkts. #4, 6-13.) While each defendant filed a separate motion, they all adopted and incorporated the bases set forth in defendant Ashland's brief in support of its motion to dismiss. (Dkts. #6-13.) These motions were also fully briefed and came under advisement on May 13, 2019.

On May 16, 2019, it came to the attention of this court that the Group A defendants' motions to dismiss for lack of jurisdiction and improper service previously filed in state court remained unresolved, as well as unbriefed. (Dkt. #24.) The court then directed the Group A defendants to refile their motions so that they could be tracked by the CM/ECF system (previously, they were attached as exhibits to the notice of removal) and set a briefing schedule. (Dkt. #24.) Rather than filing an opposition brief to these jurisdictional motions, however, plaintiffs filed a notice, which purported to dismiss the Group A defendants under Federal Rule of Civil Procedure 41(a). (Dkt. #41.) Because Rule 41(a) is limited to dismissals of an entire case, the court construed plaintiffs' notice as a motion to amend their complaint and permitted them to dismiss the Group A defendants without prejudice under Rule 15(a)(2). (June 4, 2019 Order.)[2]

On July 24, 2019, without motion or explanation, plaintiffs next filed an amended complaint in which they named all of the original defendants, including the previously

---

[2] For some unknown reason, this text order was not formally assigned a docket number, but can be found in the docket entries between dkt. ##42 & 43.

dismissed Group A defendants.  (Dkt. #45.)  In response to the court's inquiry (dkt. #46), plaintiffs explained that their plan all along had been to dismiss the Group A defendants, then to file an amended complaint adding them back in to perfect service (dkt. #47).  The court subsequently ordered plaintiffs to file a motion to seek leave to file their amended complaint.  (Dkt. #49.)  Plaintiffs have now done so.  (Dkt. #52.)

OPINION

## I.  Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) is designed to test the complaint's legal sufficiency.  *See* Fed. R. Civ. P. 12(b)(6).  "A defendant is owed 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  However, dismissal is only warranted if no recourse could be granted under any set of facts consistent with the allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The complaint must contain "enough facts to state a claim to relief that is plausible on its face" and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level.  *Twombly*, 550 U.S. at 557.  "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Bissessur*, 581 F.3d at 602 (quoting *Iqbal*, 556 U.S. at 678).

### A.  Failure to Identify the Product

Although  defendants  proffer  numerous  arguments  as  to  the  complaint's  legal

5

deficiencies, the court begins with defendants' broadest -- that none of plaintiffs' claims meet the requirements of Wis. Stat. § 895.046, and accordingly should be dismissed. (Ashland Br. (dkt. #5) 9.)

In 2011, the Wisconsin Legislature enacted Wisconsin Act 2, which both codified and made various changes to products liability actions in Wisconsin. *See* 2011 Wis. Act 2, §§ 29-31, 45(5) (codified at Wis. Stat. § 895.046). Section 895.046 applies to:

> all actions in law or equity . . . in which a claimant alleges that the manufacturer, distributor, seller, or promoter of a product is liable for an injury or harm to a person or property, including actions based on allegations that the design, manufacture, distribution, sale, or promotion of, or instructions or warnings about, a product caused or contributed to a personal injury or harm to a person or property, a private nuisance, or a public nuisance, and to all related or independent claims, including unjust enrichment, restitution, or indemnification.

Wis. Stat. § 895.046(2).

As an initial matter, the court finds that § 896.046 governs all of plaintiffs' claims. Plaintiffs acknowledge as much in their complaint by announcing this to be a "product liability action" based on Frase's exposure to products "designed, produced, manufactured, distributed, sold, supplied, delivered, handled, marketed, advertised, instructed, and/or placed into the stream of commerce" by the defendants. (Compl. (dkt. #1-2) ¶ 1.) While plaintiffs do not cite § 896.046 in their complaint, neither do they appear to dispute that section governs their claims (*see generally* Pls.' Opp'n (dkt. #19)), nor could they. Rather, comparing plaintiffs' claims to the actions described in § 895.046(2), their claims fall easily within the ambit of that subsection and are, therefore, governed by § 896.046.

The next question for the court is what factual allegations does § 896.046 require of plaintiffs. The regime outlined in § 896.046 contemplates that a products liability claim may proceed under one of two liability theories. Under the first, the plaintiff must "prove[], in addition to any other elements required to prove his or her claim, that the manufacturer, distributor, seller, or promoter of a product manufactured, distributed, sold, or promoted the specific product alleged to have caused the claimant's injury or harm." Wis. Stat. § 895.046(3). If a plaintiff "cannot meet the burden of proof under [§ 895.046(3)]," then he may proceed under a second, "risk-contribution" theory. § 895.046(4). Under this latter approach, the plaintiff need not identify the specific product alleged to have caused his injury, but must meet a number of other specific requirements. Wis. Stat. § 895.046(4). Since plaintiffs expressly disavow bringing their claims "under the Risk-Contribution Theory of Wis. Stat. § 895.046(4)" (Pls.' Opp'n (dkt. #19) 7 n.3), the key here becomes whether plaintiffs have met the statutory requirements outlined in subsection § 895.046(3).

Defendants maintain in their motions to dismiss that plaintiffs have not because they failed to identify the specific product alleged to have caused Frase's death. (*See, e.g.,* Ashland Br. (dkt. #5) 10.) At least as currently pled, the court agrees that plaintiffs' claims are too vague to provide defendants fair notice of their claims or to plausibly state a claim under § 895.046(3). Indeed, the products identified in plaintiffs' complaint are "benzene, benzene derivatives, rubber solvents, solvent blends, and other toxic and hazardous chemicals" that defendants "and/or their predecessor or successors in interest" "designed, produced, manufactured, distributed, sold, supplied, delivered, handled, marketed,

advertised, instructed, and/or placed into the stream of commerce." (Compl. (dkt. #10) ¶¶ 1, 3.)

Even if the laundry list of benzene, benzene derivatives and rubber solvents and blends were sufficient, plaintiffs' inclusion of "other toxic and hazardous chemicals" as one of "products" at issue is on its face impossibly broad. Plaintiffs provide no definition or limitation on what they consider a "toxic" or "hazardous" chemical to be, and the dictionary definitions are, respectively, "containing or being poisonous material especially when capable of causing death or serious debilitation" and "involving or exposing one to risk (as of loss or harm)." *Toxic*, Merriam-Webster (Feb. 26, 2020) https://www.merriam-webster.com/dictionary/toxic; *Hazardous*, Marriam-Webster (Mar. 8, 2020) https://www.merriam-webster.com/dictionary/hazardous. As such, defendants plausibly argue that plaintiffs' allegations could cover the entire range of their product lines. (Ashland Br. (dkt. #5) 4.)

Defendants also argue that plaintiffs' allegations regarding "rubber solvents" and solvent blends" are similarly vague, explaining that:

> A solvent has been defined as "a substance that dissolves another to form a solution." The Random House Dictionary of the English Language 1818 (Unabr. 2d ed. 1987) (identifying water as "a solvent for sugar"). Therefore, a "rubber solvent" could be any product that dissolves rubber and a "solvent blend" is nothing more than a mixture capable of dissolving another substance.

(Ashland Br. (dkt. #5) 12.)

In fairness to plaintiffs, the court recognizes that this argument may be somewhat disingenuous in light of their acknowledgement that Uniroyal maintained specific codes

8

for "Rubber Solvent" and "Solvent Blends." (*See, e.g.,* Ashland Reply (dkt. #21) 15 ("The Uniroyal code for 'Rubber Solvent' was SO-124 (later SV-797) and the code for 'Solvent Blend' was SO-149 (later SV-749).").) Still, plaintiffs' counsel also seemed to be aware of these specific codes -- as plaintiffs cited them in their opposition brief -- yet failed to include the product codes in their complaint. (Pls.' Opp'n (dkt. #19) 5.) The Seventh Circuit has cautioned that "[a]n inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims." *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014).

Along these same lines, plaintiffs argue that "Defendants know, or can easily identify from their sales records, which of their rubber solvent and solvent blend products they sold to the Uniroyal Plant during the time Douglas Frase was employed." (Pls.' Opp'n (dkt. #19) 6.) But this implies that the products at issue are only rubber solvent and solvent blends directly sold by defendants to Uniroyal from 1952-92, which is in fact a *much* narrower set of products than those vaguely alleged in the complaint. In another products liability case, the Wisconsin Supreme Court refused to accept plaintiff's argument that "residential paint pigment" was actually the product in question when the complaint referenced only "white lead carbonate," "white lead pigment," and "white lead carbonate pigment." *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶ 22, 319 Wis. 2d 91, 768 N.W.2d 674. The court reasoned that "[a] liberal pleading standard cannot transform a complaint regarding 'white lead carbonate pigment' into one regarding 'residential paint pigment.'" *Id.* ¶ 21. Similarly, plaintiffs here cannot expect this court to narrow their broad allegations regarding "benzene, benzene derivatives, rubber solvents,

solvent blends, and other toxic and hazardous chemicals" that defendants ("and/or their predecessor or successors in interest") "designed, produced, manufactured, distributed, sold, supplied, delivered, handled, marketed, advertised, instructed, and/or placed into the stream of commerce" to just "rubber solvent and solvent blend products sold by defendants to the Uniroyal plant between 1952 and 1992."

Nevertheless, plaintiffs point to two other cases involving similar claims for support: *Christ v. Exxon Mobil Corp., Eau Claire Co.*, (Wis.) Case No. 06 CV 420, and *Beaver v. Exxon Mobil Corp., Eau Claire Co.*, (Wis.) Case No. 09 CV 621.[3]  Plaintiffs argue these cases involved "identical causes of action" against the same defendants, demonstrating that defendants have "actual knowledge regarding the identity of the specific solvent products at issue." (Pls.' Opp'n (dkt. #19) 4.)  There are any number of problems with this argument.  To begin, defendants in these cases did *not* move to dismiss the suits for failure to state a claim.  Accordingly, even if plaintiffs here are asserting identical vague allegations as to the products at issue to those made in *Christ* and *Beaver,* those cases provide no helpful precedent in resolving the pending motions to dismiss, nor relieve this court of its duty to assess the adequacy of those allegations.  Moreover, *Christ* and *Beaver* were filed in 2006 and 2008, respectively, which predated the passage of Wisconsin Act 2, which, as noted above, codified the requirement that a plaintiff's products liability claim must "prove[], in addition to any other elements required to prove his or her claim" that a defendant "manufactured, distributed, sold, or promoted the specific product alleged to have caused

---

[3]  The *Beaver* lawsuit was temporarily removed to the Western District of Wisconsin, *see* No. 10-CV-375-WMC.

the claimant's injury or harm."  Wis. Stat. § 895.046(3).

Even before the Legislature's 2011 enactment of Act 2, the Wisconsin Supreme Court cautioned that "in a products liability case, the plaintiff must -- at minimum -- identify the product alleged to be defective.  Doing so puts the defendant on notice and allows the defendant to begin building a defense."  *Godoy ex rel. Gramling*, 2009 WI ¶ 21. If anything, this is even more true after codification of the *Godoy* requirement in § 895.046(3).  In particular, the "legislative findings and intent" introduction to § 895.046 indicates that the law was passed to narrow the Wisconsin Supreme Court's "improperly expansive application of the risk contribution theory of liability" and to "assure[] that businesses may conduct activities in this state without fear of being sued for indefinite claims of harm from products which businesses may never have manufactured, distributed, sold, or promoted, or which were made and sold decades ago."  § 895.046(1g).  While plaintiffs here do not pursue claims under the risk contribution theory, the fact that the Legislature passed Wis. Stat. § 895.046 in part to limit overbroad products liability claims provides useful guidance.  Given this context, and the reasons discussed above, the court concludes that plaintiffs have failed to identify with adequate specificity the allegedly defective products at issue in this case.

In so ruling, the court recognizes that a products liability plaintiff will often need to conduct discovery in order to uncover the specific identity of the allegedly injurious product. *Garross v. Medtronic, Inc.*, 77 F. Supp. 3d 809, 817 (E.D. Wis. 2015) (recognizing that formal discovery is often necessary in a products liability case "before a plaintiff can fairly be expected to provide a detailed statement of the specific bases for her claim").

11

However, this recognition does not permit a plaintiff to assert vague and implausible claims against as many products and as many defendants as it likes.  As defendants persuasively argue here,

> [p]laintiffs' overly broad terminology places [defendants' entire] product inventory at issue because one or more of those products may have (1) been capable of dissolving rubber, (2) been capable of dissolving some other substance, (3) posed any type of physical hazard, (4) posed any type of health hazard or (5) been considered a poison.

(Ashland Br. (dkt. #5) 13.)  Unfortunately, these broad category descriptions are an accurate summary of the vague allegations in plaintiffs' current pleading.  These allegations neither provide defendants fair notice of the claims against them nor state a plausible claim.  Accordingly, defendants' motion to dismiss plaintiffs' complaint will be granted.

The court hastens to add that this dismissal will be without prejudice.  It will also include a brief tolling of any applicable statute of limitations *provided* plaintiffs take advantage of the opportunity to seek leave to file an amended complaint to cure the problems identified above within twenty-one (21) days.  *See Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success."); *Shott v. Katz*, No. 15 C 4863, 2015 WL 6701795, at *5 (N.D. Ill. Nov. 2, 2015), *aff'd*, 829 F.3d 494 (7th Cir. 2016) (dismissing complaint without prejudice for failure to state a claim but giving plaintiff fourteen days to file an amended complaint).  Further, plaintiffs do not get carte blanche to start from scratch.  As discussed below, plaintiffs have specifically waived a number of claims and arguments that they will not be permitted to resurrect moving forward.

12

Additionally, if plaintiffs do seek leave to file an amended complaint, the court would be willing to consider arguments by defendants that the costs and fees of litigating the first and second amended complaints should be imposed on plaintiffs or plaintiffs' counsel. Such an argument may be particularly apt if plaintiffs continue to attempt to rename the previously dismissed Group A defendants, given plaintiffs' inexplicable procedural missteps regarding their status in this case.

Finally, the court will address defendants' remaining arguments regarding plaintiffs' claims to better guide plaintiffs and defendants as to other grounds raised for dismissal of the complaint.

### B. Waived Claims

Although plaintiffs do not allege fraud in their formal counts, defendants note that one of plaintiffs' allegations could be read to suggest a fraud claim and then go on to argue that plaintiffs have failed to allege sufficient facts to adequately state such a claim. (Ashland Br. (dkt. #5) 3.)  In their opposition brief, plaintiffs explain that they are *not* pursuing any fraud claims.  (Pls.' Opp'n (dkt. #19) 7 n.3.)  As discussed above, plaintiffs also confirm that they are not pursuing claims via the risk-contribution theory of liability under Wis. Stat. § 895.046(4).  (*Id.*)  Finally, plaintiffs specifically state that "benzene itself is not the product at issue."  (*Id.* at 10.)  Accordingly, the court will confirm that these claims and allegations -- to the extent they were asserted at all -- are dismissed with prejudice.

## C. Remaining Arguments

### 1. Failure to Warn

Defendants also attack plaintiffs' failure-to-warn claims on the basis that Wisconsin law does not recognize such a cause of action.  They write:

> Plaintiffs allege three separate causes of action under their "failure-to-warn" umbrella: negligence (Count I), strict liability (Count II) and failure to warn (Count III).  Notwithstanding the fact that FHSA preempts state-law warning claims, Wisconsin only recognizes the first two counts as viable causes of action.

(Ashland Br. (dkt. #5) 9.) In support, defendants cite to *Kozlowski v. John E. Smith's Sons Co.*, 87 Wis. 2d 882, 898, 275 N.W.2d 915 (1979), and Wisconsin Jury Instructions 3242 and 3262.  While these authorities do not *reject* failure-to-warm claims under Wisconsin law, they do suggest that such claims generally lie under a negligence or strict liability theory and, thus, at least overlap with the causes of action alleged in plaintiffs' complaint. Indeed, Wisconsin Jury Instruction 3242 is titled "negligence: duty of manufacturer (supplier) to warn" and Instruction 3262 is titled "strict liability: duty of manufacturer (supplier) to warn."  Moreover, in *Kozlowski*, the supreme court analyzed a failure-to-warm claim under strict liability and negligence theories.  82 Wis. 2d at 898 ("[W]e will proceed to discuss whether on the basis of strict liability or common law negligence, Smith failed to warn of the alleged hazardous condition.").  In sum, defendants own citations suggest that Wisconsin *does* recognize failure to warn claims, and the court will not dismiss any of plaintiffs' claims outright on this basis, while at the same time recognizing that they may overlap with plaintiffs' negligence and strict liability claims.

14

### 2.  Failure to State a Claim for Manufacturing and Design Defects

Defendants next argue that plaintiffs have both failed to allege sufficient facts to support their claims of manufacturing and design defects.  (Ashland Br. (dkt. #5) 16.) Plaintiffs complaint contains only two allegations regarding such defects:  (1) "Defendants supplied products with marketing, design, and/or manufacturing defects" and (2) "The subject products were defective in their design, manufacture and/or warnings that accompanied them."  (Compl. (dkt. #1-2) ¶¶ 35.h, 43.)  These claims are indeed perfunctory.  While lacking in detail, however, they also state plausible claims and are not so vague as to fail to provide basic notice to defendants.  *See Garross*, 77 F. Supp. 3d at 817 (plaintiff's allegation that defendants' device "was defectively designed because the design was unsafe when used in the manner promoted by Defendants and in a manner reasonably foreseeable by the Defendants" sufficiently stated a claim).  Whether there is any substance to the claim is a proper subject of discovery.

### 3.  Preemption

Defendants also argue that plaintiffs' failure-to-warn claims are preempted by the Federal Hazardous Substances Act ("FHSA"), 15 U.S.C. § 1261, *et seq*.  (Ashland Br. (dkt. #5) 4-8.)  Certainly, the FHSA may preempt a state law that "interfere[s] with, or [is] contrary to" it.  *Aux Sable Liquid Prod. v. Murphy*, 526 F.3d 1028, 1032 (7th Cir. 2008) (internal citations and quotations omitted).   "Pre-emption may be either express or implied."  *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152 (1982).  Here, the FHSA contains an express preemption clause, which provides:

> no state . . . may establish or continue in effect a cautionary

> labeling requirement applicable to such substance or packaging
> and designed to protect against the same risk of illness unless
> such cautionary labeling requirement is identical to the
> labeling requirement under [this Act].

15 U.S.C. § 1261, note (b)(1)(A).

However, preemption is an affirmative defense, meaning *defendants* bear the burden of proving it. *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010). While the FHSA establishes cautionary labeling and warning requirements for certain hazardous products, 15 U.S.C. § 1261, *et seq.*, it only regulates products that are "intended, or packaged in a form suitable, for use in the household or by children." 15 U.S.C. § 1261(p).

Defendants argue that plaintiffs' allegations "cover the entire range of [defendants'] product line, including its retail consumer products." (Ashland Br. (dkt. #5) 4.) In particular, defendants point out that in plaintiffs' complaint, they allege:

> [n]either Decedent nor the average consumer of Defendants'
> products would have expected Defendants' products to contain
> carcinogenic chemicals, given the fact that they are *consumer-
> grade products* and do not carry warnings advising of the cancer
> risk on the product labels.

(*Id.* (citing Compl. (dkt. #1-2) ¶ 43).) Because, defendants argue, plaintiffs' allegations relate to products regulated by the FHSA, plaintiffs' failure-to-warn state law claims are preempted by the FHSA. (*Id.*) However, plaintiffs counter that the products at issue in this case were not subject to FHSA regulation because they are not "household products" under 15 U.S.C. § 1261(p). (Pls.' Opp'n (dkt. #19) 6.) More specifically, they point out that tire manufacturing is a "large-scale industrial process" and that the "rubber solvent and/or solvent blend" products used in bulk at tire manufacturing facilities such as Uniroyal are "not intended nor suitable for use in the home by any reasonable stretch of the

16

imagination." (*Id.* at 6-7.)

At this point, defendants have yet to prove that any of plaintiffs' claims are preempted. In fairness, plaintiffs' allegation that the products at issue are "consumer-grade products" does suggest that those products may be regulated by the FHSA. But only when a plaintiff "admits all the ingredients of an impenetrable defense" does he plead himself out of court. *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004). Here, that a product is "consumer-grade" does not necessarily mean that it was intended or packaged in a form suitable for use in the household such that it is regulated by the FHSA. *See Vinson v. Vermilion Cty., Illinois*, 776 F.3d 924, 929 (7th Cir. 2015) (plaintiff did not plead herself out of court when she alleged that the "complied" with a search, which did not prove that she *consented* to the search). Moreover, defendants' own arguments that plaintiffs' allegations include *all* of its products, including presumably non-household products, would suggest that plaintiffs' failure-to-warm claims are not necessarily preempted at least as to non-household products. Given the lack of clarity at this stage as to what products are at issue in this case, a decision as to preemption would be premature. Of course, defendants are free to argue otherwise at later stages in this litigation.

### 4. Defense under Wis. Stat. § 895.047(3)(d)

Defendants similarly argue that plaintiffs have pleaded themselves out of court by alleging all the ingredients of the statutory defense provided under Wis. Stat. § 895.047(3)(d). That subsection states that:

> The court shall dismiss the claimant's action under this section
> if the damage was caused by an inherent characteristic of the
> product that would be recognized by an ordinary person with

> ordinary knowledge common to the community that uses or consumes the product.

*Id.*

Here, plaintiffs allege that "Benzene is a known human carcinogen and is a natural constituent of crude oil." (Compl. (dkt. #1-2) ¶ 2.) According to defendants "[b]y alleging that benzene is both an inherent characteristic of crude oil and a known carcinogen, Section 847.047(3)(d) requires dismissal of all their strict product liability claims." (Ashland Br. (dkt. #5) 19.) However, as discussed above, plaintiffs have also explained in their briefing that benzene itself isn't the *product* at issue, suggesting instead that benzene is a *component* of the alleged products. (Pls.' Opp'n (dkt. #19) 10.) Therefore, even if plaintiffs' allegations proved that an inherent characteristic of benzene was that it was carcinogenic and would be recognized by an ordinary person, this does not prove that the *product* at issue falls under the defense provided in Wis. Stat. § 895.047(3)(d). Regardless, this is a factual dispute that cannot ordinarily be resolved in a motion to dismiss.

## II. Motion for leave to file second amended complaint

The court will first briefly address plaintiffs' motion for leave to file a second amended complaint. (Dkt. #52.) For reasons just explained, the court concluded that plaintiffs' operative complaint fails to state a claim upon which relief can be granted. Because plaintiffs' proposed, second amended complaint is substantively identical to its operative complaint -- the amended complaint simply names different defendants -- it is likewise deficient, and the court will accordingly deny plaintiffs' request for leave to file the second amended complaint on the grounds that it would be futile to do so. *Foman v.*

18

*Davis*, 371 U.S. 178, 182 (1962) (court may deny opportunity to amend complaint based on futility of amendment); *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001) ("[D]istrict court need not allow an amendment when . . . the amendment would be futile.").

ORDER

IT IS ORDERED that:

1) Defendants' motions to dismiss (dkts. #4, 6, 7, 10, 13) are GRANTED IN PART and DENIED IN PART consistent with the Opinion above.

2) Plaintiffs' motion for leave to file a second amended complaint (dkt. #52) is DENIED.

3) Consistent with this Opinion and Order, plaintiffs may have until May 15, 2020, to seek leave to file an amended complaint, if they so choose.  Failure to do so will result in dismissal of this case without prejudice.

Entered this 24th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

19